UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| WILLIAM CHARLES CONSTRUCTION COMPANY, LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>TEAMSTERS LOCAL UNION 627,<br><br>    Defendant. | Case No. 14-1306 |

## ORDER

Now before the Court is the Motion to Enforce Arbitration Award or, Alternatively, Motion for Summary Judgment filed by the Defendant/Counter-Claimant, Teamsters Local Union 627 (the "Union"). For the reasons set forth below, the Motion [8] is GRANTED.

## Background

The Union is a labor organization representing employees in an industry affecting commerce within the meaning of Section 2(5) of the Labor-Management Relations Act, 29 U.S.C. § 152(5). Plaintiff/Counter-Defendant, William Charles Construction Company, is an employer within the meaning of Section 2(2) of the LMRA.

On or about January 14, 2013, the Illinois Department of Transportation ("IDOT") and certain Illinois AFL-CIO Building Trades signatories, including the Union, entered into a Project Labor Agreement ("PLA") covering a construction project known as the Biggsville Project. Plaintiff has signed a Contractor Letter of Assent binding it to the terms of the PLA. By signing the PLA, Plaintiff agreed "to be bound and abide by the terms of the following in order of precedent: (a) the applicable collective bargaining agreement between the

1

Prime Contractor and one or more of the unions made signatory hereto . . . or the current applicable area collective bargaining agreement for the relevant Union that is the agreement certified by the Department of Labor for purposes of establishing the Prevailing Wage applicable to the Project." (PLA, Article 1.6) The only exception to this provision is where a contrary provision is specifically set forth elsewhere in the PLA, such as jurisdictional disputes as discussed in Article 5. *Id.*

Article 1.4 of the PLA states that "the employees working under this PLA shall constitute a bargaining unit separate and distinct from all others." Article 1.5 adds that "in the event of a variance or conflict, whether explicit or implicit, between the terms and conditions of the PLA and the provisions of any other applicable national, area, or local collective bargaining agreement, the terms and conditions of this PLA shall supersede and control." Article 5.1 states that if disputes other than jurisdictional disputes arise under a particular CBA, "said disputes shall be resolved by the Grievance/Arbitration procedure of the applicable collective bargaining agreement. The resulting determination from this process shall be final and binding on all parties bound to its process." Articles 6.4 through 6.15 then provide a method for resolving jurisdictional disputes between the parties, providing for the appointment of an arbitrator from a standing list to issue a final and binding decision.

The other agreement at play in this case by virtue of Articles 1.6 and 5.1 of the PLA is the area collective bargaining agreement ("CBA") between the Associated General Contractors of Illinois and the Illinois Conference of Teamsters (the "Articles of Construction Agreement" or "ACA"). As a result of the deferral of non-jurisdictional disputes to the area CBA set forth in Article 5.1 of the PLA, Article 21 of the ACA provides the applicable grievance and arbitration procedure for non-jurisdictional disputes: (1) the filing of grievances using the standard

Grievance Form after attempt to resolve the grievance at the local level; (2) meeting between employer's representative and Local Union to attempt to reach an agreement; (3) referral to a Joint Committee to settle disputes that cannot be settled between the employer and the Local Union; and (4) submission to arbitration where the Joint Committee is deadlocked and a majority determines to submit the matter to an arbitrator for decision.

As part of its work on the Biggsville Project, Plaintiff used Articulated End Dump Trucks ("AED trucks"). On May 15, 2013, Plaintiff assigned operation of AED trucks to members of the International Union of Operating Engineers Local No. 459 ("IUOE") and entered into an agreement with IUOE. The Union objected to this assignment as a violation of the Construction Site Jurisdictional Agreement between the International Brotherhood of Teamsters and IUOE.

On October 30, 2013, Plaintiff, the Union, and IUOE appeared before Arbitrator Glenn A. Zipp for an arbitration hearing to determine which Union had jurisdiction over the AED Truck operation on the Biggsville Project. No request was made for back pay for the Union's workers. The next day, Arbitrator Zipp found that the AED truck work should be reassigned to the Union, and Plaintiff then hired workers represented by the Union to operate AED trucks on the project site.

On or about November 5, 2013, the Union filed a grievance against Plaintiff under the Articles of Construction Agreement ("ACA") between the Illinois Conference of Teamsters and Associated General Contractors of Illinois ("AGCI"). The grievance asserted:

> On or about May 22, 2103, the above named contractor did assign the work of operating 16 articulate dump trucks on the Rt. 34 Biggsville by-pass over the objections of Local No. 627. It has since been ruled by an arbitrator (Mr. Glenn Zipp) that this is the work of the Teamsters. The decision was reached October 30, 2013.

(Grievance #20-03-2014).

On or about December 22, 2013, the Union filed a grievance against the Company asserting:

> On or about November 21 and 22, the Company worked 2 people ahead of Mark Lane and Camber Hill which violated our seniority rights. We are asking to make whole for al losses incurred by the violations via contract.

(Grievance #22-03-2014).

Pursuant to the procedures set forth in Article 21 of the ACA, both non-jurisdictional grievances were heard by a Joint Grievance Committee on March 26, 2014. Plaintiff's General Superintendent, James Kohlhorst ("Kohlhorst"), was present at the hearing. No transcript exists for this hearing. With respect to Grievance #20-03-2104, the Joint Grievance Committee ruled in favor of the Union, awarding back pay to all employees impacted by the Company's actions for a period of time between May 22, 2013 and October 30, 2013. With respect to Grievance #22-03-2014, the Joint Grievance Committee ruled in favor of the Union, awarding Camber Hill and Mark Lane one day's pay each. These findings were reduced to writing on April 3, 2014. The written decision for Grievance #20-03-2014 stated:

> This matter came before the Joint Grievance Committee on a grievance filed by Teamsters Local 627 alleging that William Charles Construction Company violated the Article of Construction by assigning the operation of articulated dumps to employees not covered by that agreement. It is undisputed that for the period 5-22-13 to 10-30-13 the Employer did in fact use employees not covered by the Agreement to operate articulated dumps at the project located at Biggsville, IL IDOT contract #68409.
>
> Based on the undisputed facts, and all of the evidence presented, the Committee finds that the Employer did violate the Articles of Construction from 5-22-13 to 10-30-13 by using employees not covered by that Agreement to operate articulated dumps. Therefore, the Committee (voted unanimously) to enter this AWARD directing the Employer cease and desist from such violation in the future and make whole for all wages and all benefit

> to those persons covered by this Agreement who, according to Article 4 of the Agreement (referral provision), would have performed the work from 5-22-13 to 10-30-13.

With respect to Grievance #22-03-2014, the written decision stated, in its entirety:

> Based on the facts presented, the claim of the Union is upheld for one (1) day's pay of eight (8) hours for Camber Hill and Mark Lane.

On April 3, 2014, Frank Kazenske ("Kazenske"), the Director of Labor Relations for the AGCI, advised Kohlhorst that the Teamsters had a written decision from the Joint Grievance Committee decision against Plaintiff on the grievances and that the decision had been sent to the AGCI management committee for review. Plaintiff asserts that no actual copy of the final decision was ever received. On April 24, 2014, the Plaintiff advised Kazenske that the Union did not have the ability to file grievances outside of the PLA and disputed the authority of the Joint Grievance Committee to decide any grievance arising between the parties. Plaintiff has since disputed the validity of and refused to comply with the awards.

Plaintiff brought this action seeking a declaratory judgment that the PLA rather than the ACA governs the relationship between the parties in this matter, requiring the enforcement of the October 31, 2013 arbitration decision of Arbitrator Glenn Zipp and the arbitration of the Union's grievances. The Union has filed a Motion to Enforce Arbitration Award or Alternatively for Summary Judgment. Plaintiff has responded, and the matter is fully briefed. This Order follows.

### **Standard of Review**

A motion for summary judgment will be granted where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A material fact is one that might affect the outcome of the suit. *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 598-99 (7th Cir. 2000). The moving party may meet its burden of showing an

absence of material facts by demonstrating "that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party meets its burden, the non-moving party then has the burden of presenting specific facts to show there is a genuine issue of material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

On summary judgment, the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd.*, 475 U.S. at 588. Any disputed issues of fact are resolved against the moving party. *GE v. Joiner*, 552 U.S. 136, 143 (1997). The moving party has the responsibility of informing the Court of portions of the record or affidavits that demonstrate the absence of a triable issue. *Celotex Corp.*, 477 U.S. at 323. Federal Rule of Civil Procedure 56(e) requires the non-moving party to go beyond the pleadings and produce evidence of a genuine issue for trial. *Id*. at 324. Where a proposed statement of fact is supported by the record and not adequately rebutted, a court will accept that statement as true for purposes of summary judgment; an adequate rebuttal requires a citation to specific support in the record. *Drake v. Minnesota Mining & Mfg. Co.*, 134 F.3d 878, 887 (7th Cir. 1998). This Court must then determine whether there is a need for trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may be reasonably resolved in favor of either party. A*nderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

## Discussion

The Union argues that Plaintiff's failure to comply with the Joint Grievance Committee's award is a breach of a federal labor contract subject to § 301 of the Labor Management Relations Act, 29 U.S.C. § 185. The Union cites *Plumbers Pension Fund, Local 130 v. Domas Mechanical*

*Contractors, Inc.*, 778 F.2d 1266, 1268 (7th Cir. 1985), for the proposition that such an action challenging an arbitration award is subject to the 90-day period of limitations under the Illinois version of the Uniform Arbitration Act. "[T]he failure to challenge an arbitration award within the applicable limitations period renders the award final." *International Union of Operating Engineers, Local 150, AFL-CIO v. Centor Contractors, Inc.,* 831 F.2d 1309, 1311 (7th Cir. 1987); *Sullivan v. Lemoncello*, 36 F.3d 676, 681 (7th Cir. 1994). As the Complaint seeks a ruling that the awards of the Joint Grievance Committee issued on March 26, 2014 and reduced to writing on April 3, 2014 are unenforceable, the Union argues that this litigation, which was not filed until July 31, 2014, is barred by the limitations period.

Plaintiff responds that this is not an action to vacate an arbitration award but rather a declaratory judgment action seeking: (1) to enforce the arbitration decision of Arbitrator Glenn Zipp entered on October 31, 2013; (2) to compel arbitration by Defendant as to its grievances; and (3) a declaration stating that the parties' PLA governs the relationship of the parties and that the Union must abide by the PLA. As such, Plaintiff argues that the longer statutes of limitations for breach of contract, enforcement of an arbitration decision, or an action to compel arbitration are applicable.

Plaintiff has carefully and artfully attempted to draft its Complaint to avoid being characterized as an action to vacate the Joint Grievance Committee's decision. However, to grant the relief requested in its second and third requests, that is precisely what the Court would have to do, as a declaration that the PLA is the only governing document and compelling the Union to abide by it under Plaintiff's theory of the case would amount to a nullification of the Joint Grievance Committee's proceedings and decision.

The Seventh Circuit has held that for objections to the authority of entities like the Joint Grievance Committee and corresponding claims that resulting arbitration awards are nullities, "the only avenue for such relief is a timely suit to vacate." *Sullivan v. Gilchrist*, 87 F.3d 867, 871 (7th Cir. 1996). As a result, a party's failure to move to vacate an arbitration award within the prescribed time period renders the award final and "precludes it from seeking affirmative relief in a subsequent action …." *Id., citing Domas*, 778 F.2d at 1268; *Centor*, 831 F.2d at 1311. This preclusion has been upheld even where the employer is a non-signatory or non-party to the agreement in question and is arguing that the alleged agreement does not even apply. *International Union of Operating Engineers, Local 150 v. Rabine*, 161 F.3d 427, 430 (7th Cir. 1998); *Gilchrist*, 87 F.3d at 871-72; *International Union of Bricklayers and Allied Craftworkers v. Gianakas*, 2005 WL 1705803, at *4 (N.D.Ill. July 15, 2005); *Illinois District Council No. 1 of the International Union of Bricklayers and Allied Craftworkers v. Christoffer*, 2006 WL 2583724, at *4 (Sept. 5, 2006). The only exception to this rule is where a party did not receive notice of the arbitration itself or the resulting award, was not a party to the arbitration hearing, or where the Union knew at the time of the hearing that the party was not legally liable but proceeded anyway in bad faith. *Id.*, *citing Rabine*, 161 F.3d at 433; *Nagel*, 2005 WL 1651814, at **3-4.

Here, it is undisputed that Plaintiff was named in the grievances in question. There is no indication in the record that Plaintiff did not receive notice of the arbitration. To the contrary, James Kohlhorst, Plaintiff's General Superintendent, was present at the hearing and advised the Committee that Plaintiff disputed both the ability of the Union to bring such a grievance and that an arbitrator had already issued a final decision on the jurisdictional dispute. On April 3, 2014, the Joint Grievance Committee reduced their findings to writing, and Kohlhorst received an

email from Frank Kazenske titled "Teamsters Grievance Committee written decision" that indicated:

> The following is the written decision from the Teamsters for the grievance hearing that took place last Wednesday March 26, 2014 at the AGCI office in Springfield. If you have any questions, please feel free to call or send me an e-mail. This written decision has been sent to the AGCI management committee members for their review and approval.

This was followed by the text of the decision on the two grievances, finding in favor of the Union and directing Plaintiff to make the Union whole for any losses (back wages and benefit contributions) incurred by the violations. While Plaintiff asserts that it never received a copy of the final written decision, it is clear that Plaintiff was aware of the substance of the decision based on this email and subsequent letters from Kohlhorst to Kazenske objecting to the authority of both the Union to file and the Joint Committee to hear these grievances. Nor has Plaintiff pointed to any evidence that at the time of the hearing, the Union proceeded in bad faith despite having knowledge that Plaintiff was not liable.

Plaintiff argues that the well-defined body of law set forth above has been eroded by the Seventh Circuit's decision in *Merryman Excavation, Inc. v. International Union of Operating Engineers, Local 150*, 639 F.3d 286 (7th Cir. 2011). In that case, the Court of Appeals held that "a joint committee is not a genuine arbitration subject to the Federal Arbitration Act (FAA) and the full requirements of impartiality that apply to genuine arbitration." *Id.*, at 290. However, the Seventh Circuit's discussion is focused on procedural requirements (namely equal representation and impartiality) for such a hearing; there was no issue as to the timeliness of the action because Merryman had filed a timely motion to vacate the award. *Id.* The court went on to find that the failure to comply with a joint committee award "is a breach of a federal labor contract subject to section 301 jurisdiction," and it was noted that "permitting parties to keep silent during

arbitration and raise arguments in enforcement proceedings would undermine the purpose of arbitration, which is to provide a fast and inexpensive resolution of labor disputes." *Id.*, at 290-91, *quoting National Wrecking Co. v. Int'l Bhd. Of Teamsters, Local 731*, 990 F.2d 957, 960-61 (7th Cir. 1993).

A review of case law since *Merryman* reveals that the case has not been applied by the Seventh Circuit or district courts in this circuit in the manner suggested by Plaintiff. *Merryman* has not been construed as disturbing the line of precedent holding that challenges to a joint committee award must generally be brought within 90 days or changing the consistent finding that "[t]he contract may have been invalid, or the clause inapplicable to the dispute, but when [Plaintiff] . . . made the decision to sit on their collective hands, they waived the right to challenge the outcome later." *See Rabine*, 161 F.3d at 432.

The PLA, to which Plaintiff admits to being bound, provides for different treatment of jurisdictional and non-jurisdictional disputes. It provides that jurisdictional disputes will be resolved by the arbitration provisions provided in Article 6 of the PLA, as was the case with the jurisdictional dispute referred to Arbitrator Zipp that Plaintiff claims to want to enforce in its first request. The PLA further directs that non-jurisdictional disputes will be resolved by the mechanisms provided in the area CBA, which in this case is referral to the Joint Grievance Committee as set forth in Article 21 of the ACA. Plaintiff cannot pick and choose which portions of the PLA it will abide by and ignore others.

As the record indicates that the two grievances were properly referred to the Joint Grievance Committee pursuant to the ACA, as directed by the PLA, Plaintiff's requests to determine that the PLA is the only agreement binding the parties and to compel arbitration of the Union's disciplinary grievances must be rejected as untimely and as a matter of law. Although

Plaintiff's attempt to "enforce the arbitration of Arbitrator Zipp" would be timely filed under the longer limitations period for actions to enforce arbitration awards, a review of Plaintiff's Complaint and Response to the Motion for Summary Judgment reveals that the work was promptly reassigned to the Union as ordered by the Arbitrator. It is clear that the invocation of the award in this case is merely an effort to suggest that the arbitration procedure employed in reaching that decision should govern all disputes that arise on the project. As such, there is no proper enforcement of the award to be ordered at this time, and the Union's Motion shall be granted.

## **Conclusion**

For reasons stated above, the Union's Motion to Enforce Arbitration Award or Alternatively, Motion for Summary Judgment [8] is GRANTED in its entirety. All matters in controversy having been resolved, any existing deadlines are vacated, and this matter is now TERMINATED.

Entered this 23rd day of February, 2015.

s/ James E. Shadid
James E. Shadid
Chief United States District Judge